**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SAMAAD BISHOP and JABARI BISHOP,

                              Plaintiffs,

             - against -

COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE COMISSIONER
RICHARD DORMER, in his Individual and
Official Capacities, POLICE OFFICER
JOSEPH M. ZURL, SHIELD NO. 5349, in his
Individual and Official Capacities, as a Suffolk
County Police Officer and POLICE OFFICER
DAVID J. FRIEDRICH, SHEILD NO. 5729,
in Individual and Official Capacities as a
Suffolk County Police Officer,

                              Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

13-446 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

*Pro se* Plaintiffs Samaad Bishop and Jabari Bishop ("Plaintiffs") bring this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1986 against Defendants Suffolk County ("the County"); Suffolk County Police Department ("SCPD") Commissioner Richard Dormer ("Commissioner Dormer"), in his individual and official capacity; Suffolk County Police Officer Joseph M. Zurl ("Zurl"), in his individual and official capacity; and Suffolk County Police Officer David J. Friedrich ("Friedrich"), in his individual and official capacity (collectively, "Defendants"). Plaintiffs allege violations of their constitutional rights under the Fourth Amendment. *See generally* Third Verified Complaint ("TAC") [DE 29]. Presently before the Court is the motion by Plaintiffs' to compel Defendants to produce certain documents responsive to Plaintiffs' discovery

requests. *See* Notice of Motion and Declaration of Samaad Bishop ("Pls.' Mot.") [DE 56].
Defendants oppose the motion. *See generally* Defendants' Memorandum of Law In Opposition to
Plaintiff Samaad Bishop's Motion to Compel ("Defs.' Opp'n) [DE 63]. For the reasons set forth in
this Memorandum and Order, Plaintiffs' motion to compel discovery is GRANTED, in part, and
DENIED, in part.

## II. BACKGROUND

### A. Allegations in the Complaint

The following allegations are taken from the TAC. On January 20, 2010, Plaintiff Jabari Bishop ("Jabari") was driving a car through Amityville with his father, Samaad Bishop ("Samaad"), and his aunt. TAC ¶ 27. Jabari made a complete stop at a stop sign near Williams Avenue and Cahill Street when, at around 1:05 p.m., "a black unmarked police car" pulled up behind Jabari's car "with its siren and lights blaring." *Id.* ¶ 28. Defendants Zurl and Friedrich directed Jabari through a PA microphone system to pull over. *Id.* ¶ 29. Jabari pulled the car over and the officers approached the vehicle. *Id.* ¶¶ 30, 32. According to the TAC, Zurl approached the driver's side of the vehicle, while Friedrich approached the passenger side of the vehicle "with his hand in a threatening manner on the butt of his hand gun." *Id.* ¶ 32. Zurl asked Jabari to roll down his window and present his driver's license, insurance and motor vehicle registration for inspection. *Id.* ¶¶ 33, 35. As Jabari gathered these items, Zurl informed him "that he was being pulled over for 'Creeping.'" *Id.* ¶ 36. While Zurl was conversing with Jabari, Friedrich "in a threatening, and menacing manner had his hand on his firearm, knocked on the passenger's window and instructed the third passenger [Jabari's aunt] to roll her window down." *Id.* ¶ 39. Jabari's aunt complied with this directive as Jabari provided Zurl with the requested documents. *Id.* ¶¶ 38, 40. During the traffic stop, Samaad observed Zurl "shaking his head at" Friedrich

2

"signaling that both Defendant police officers knew their traffic stop . . . was illegal and was without any objective[ly] articulable reasonable suspicion of criminality and/or probable cause that a crime or traffic infraction was in fact committed or about to be committed." *Id.* ¶ 46. Eventually, the officers informed Jabari that he was "free to drive off." *Id.* ¶ 48. The officers did not issue Jabari a traffic ticket for "creeping" and none of the passengers were arrested. *Id.* Jabari drove away with Samaad and his aunt in the car. *Id.* ¶ 49.

Plaintiffs thereafter commenced this civil rights action against Defendants alleging, *inter alia*, that their Fourth Amendment rights had been violated by the January 20, 2010 traffic stop conducted by Zurl and Friedrich. *See id.* ¶¶ 114-19. Plaintiffs assert that the traffic stop "was objectively unreasonable under the circumstances," as Zurl and Friedrich "lacked any basis to formulate an objectively reasonable articulable suspicion of criminality or probable cause" that Plaintiffs were engaging in, or had engaged in, criminal activity. *Id.* ¶¶ 54, 80. Plaintiffs also bring claims of municipal liability against the County pursuant to *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), alleging, *inter alia*, that the County maintained an unconstitutional policy or custom of (1) requiring SCPD officers to "mak[e] suspiciousless traffic stops [of] motorist[s] to meet 'productivity standards' or *de facto* quotas of a certain number of traffic stops and specific types of arrests per month for each SCPD officer;" *id.* ¶ 82; and (2) failing to properly train, screen, and supervise SCPD officers, *id.* ¶ 130; *see also id.* ¶¶ 129-31; 142-45. Finally, Plaintiffs contend that Zurl, Friedrich, and Dormer engaged in a § 1983

conspiracy based on, *inter alia*, their willful implementation and enforcement of the County's policy of conducting unconstitutional traffic stops. *See id.* ¶¶ 139-41; 152-54.[1]

B.   **Discovery**

As part of their Rule 26(a) Initial Disclosures, Defendants produced an Internal Affairs Report ("IA Report") regarding the January 20, 2010 traffic stop. The IA Report included "Internal Correspondences" Zurl and Friedrich each made to an SCPD Deputy Inspector regarding the traffic stop. *See* Internal Correspondence by Zurl, dated Nov. 30, 2011 ("Zurl Correspondence"), annexed as Ex. A to Defs.' Mem. [DE 63-2]; Internal Correspondence by Friedrich, dated Nov. 11, 2011 ("Friedrich Correspondence"), annexed as Ex. B to Defs.' Mem. [DE 63-3]. In their respective correspondences, Zurl and Friedrich state that, on January 20, 2010, they were assigned to patrol North Amityville due to "recent shootings" in the area. *See* Zurl Correspondence, Defs.' Mem., Ex. A.; Friedrich Correspondence, *id.*, Ex. B. According to Zurl, he and Friedrich were made aware prior to January 20, 2010 "that there have been a number of 'Shots Fired' calls and confirmed shootings in the area," as well as "gang members who live on Madison Ave." *See* Zurl Correspondence, *id.*, Ex A. Both officers observed Plaintiffs' car "travelling at a lower than normal speed" and making "numerous stops along Madison Ave." *Id.*; *see* Friedrich Correspondence, *id.*, Ex. B. In light of these "suspicious" actions and the "recent gun violence" in the area, the officers conducted a traffic stop. Zurl Correspondence, *id.*, Ex. A; *see* Friedrich Correspondence, *id.*, Ex. B. Upon approaching the vehicle, the officers determined that "a male teenager was receiving instructions from his parents on how to pass his road test." Zurl

---

[1]   In addition to these claims, Plaintiffs assert a § 1983 failure to supervise claim against Dormer, *see* TAC ¶¶ 133-38; 146-51, and a § 1986 failure to intervene claim against all Defendants, *see id.* ¶¶ 155-68. They also seek a declaratory judgment, *id.* at ¶¶ 169-80.

Correspondence, *id.*, Ex. A; *see* Friedrich Correspondence, *id.*, Ex. B.  According to Zurl, the officers "explained to the family fully the reason for the interview, indicating the recent violence and what we deemed to be suspicious activity.  We wished the family well and concluded the interview."  Zurl Correspondence, *id.*, Ex. A.

Around May 5, 2014, Plaintiffs served the County with their first request for the production of documents.  *See* Plaintiff Samaad Bishop's First Request for the Production of Documents ("Pls.' Doc. Reqs."), annexed as Ex. C to Defs.' Mem. [DE 63-4].  The County served its responses around July 18, 2014.  *See* Defendant Suffolk County's Response to Plaintiff Samaad Bishop's First Request for Production of Documents ("County Resps."), annexed as Ex. D to Defs.' Mem. [DE 63-5].

After this discovery had been exchanged, Plaintiffs filed a letter motion on August 29, 2014 seeking, *inter alia*, an enlargement of time to depose defendants Zurl and Friedrich.  DE 49.  Plaintiffs asserted that an extension was necessary because they had "not yet receiv[ed] 9-1-1 records, SPRINT records and any other records that support[] said Defendants justification for the subject *Terry* stop ('confirmed guns,' 'shots being fired,' high incidence of crime and gang members in the vicinity of the stop[)]" set forth in the Zurl Correspondence and Friedrich Corresondence.  *Id.* (emphasis added).

During a September 11, 2014 conference with the parties, the Court granted Plaintiffs' request for an extension of time to complete discovery.  DE 51 ¶ 10.  The Court stated, as relevant here:

> Looking at DE 45, plaintiffs are seeking . . . 911 records.  Defendants' counsel confirmed that there are no 911 records with regard to the traffic stop involving the Bishops.  However, as mentioned in the Internal Affairs document, it appears that what plaintiffs are looking for emanates from internal correspondence of the two defendant

police officers with Deputy Inspector Lewis which references a "high crime area" in Amityville, "recent shootings in the area," known gang members, etc. Apparently, plaintiffs requested documents/ information on "recent shootings" in their discovery demands. Defendants maintain that this is a collateral issue and that the request is overbroad, irrelevant and not material. Defendants also assert that putting together information on every shooting in Amityville is unduly burdensome. In addition, defendants argue that information concerning unrelated shootings is protected by the law enforcement privilege. In addition, under a provision of the Suffolk County Code, defendants are not permitted to turn over 911 tapes in unrelated matters without a direct order from the Court.

Defendants' counsel stated that he has made inquiry of both police officers as to how they obtained the above information, either in written form or orally. He has received a response back from one officer and is awaiting a response from the other. If the information is in writing, defendants' counsel will turn that material over to the plaintiffs promptly. If the information was obtained orally, defendants' counsel will confirm that in writing to the plaintiffs and the plaintiffs can pursue that line of questioning with the defendants at their depositions. If the information is in writing, I am directing defendants' counsel to turn it over by **September 30, 2014**. Otherwise, if the information was conveyed orally, I am directing defendants' counsel to provide the name of the person who provided the information to the officers by that September 30 date. Plaintiffs are directed to review the information. If, after doing so, plaintiffs believe in good faith that motion practice is still warranted, plaintiffs are to file their motion to compel by **October 8, 2014** and to be sure to include any case law supporting their arguments. Mr. Bishop was cautioned that he needs to make his motion papers as specific as possible with regard to the exact information he is seeking and for what time frame the information is sought. Defendants have three business days to file opposition in the event the motion is filed.

The police officers' depositions are deferred until this issue is resolved. However, I cautioned Mr. Bishop that these depositions cannot be put off indefinitely. If information or materials come to light after the police officers have been deposed and plaintiffs did not have the opportunity to inquire about that information during a police officers' depositions, then plaintiffs can make an application to the Court to re-open the depositions and their rights in that regard are preserved.

*Id.* (emphasis in original).

Pursuant to the Court's September 11, 2014 Order, Defendants' prior counsel, Attorney Jason Bassett, sent Plaintiffs a letter on September 29, 2014 regarding the "sources of information" for the references Zurl and Friedrich made to recent shootings and gang violence in their respective Internal Correspondence. *See* Letter by Jason Basset, dated Sept. 29, 2014 ("Bassett Ltr."), annexed as Ex. I to Defs.' Opp'n [DE 63-10]. According to Attorney Bassett, the references to "recent shootings in the area," "recent shootings in the 1st precinct" "'Shots Fired' calls . . . in the area," "confirmed shootings . . . in the area," "recent gun violence" and "recent violence" derived from "oral communications" Zurl and Friedrich had with their immediate supervisor, Sgt. Michael McDowell, as well as "S.C.P.D. First Precinct Tour Reports" ("Tour Reports"). Bassett Ltr., Ex. I., Defs' Opp'n. Attorney Bassett attached the Tour Reports to his letter. *See id.* As to the reference to "gang members who live on Madison Ave.," Attorney Bassett's letter states:

> Sgt. Zurl was personally present at the July 12, 2009 arrest of an individual named Shadex Bunn who at that time admitted he was a gang member and was found in the presence of approximately twenty (20) other gang members. Shadex Bunn resided at 104 Madison Avenue in North Amityville, N.Y. The above information was also gathered by Sgt. Zurl and Det. Friedrich over time through day-to-day interactions with the public (including interviews with civilians) and conversations with other officers working in the area. Neither Sgt. Zurl nor Det. Friedrich can recall any specific conversations regarding the above.

*Id.*

### III.   LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." F. R. Civ. P. 26(b). "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear

7

on any issue that is or may be in the case.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York*, No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009); *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes.").

## IV. DISCUSSION

Having received the September 29, 2014 letter and Tour Reports submitted by Attorney Basset, Plaintiffs now move to compel Defendants to produce the following: (1) Memorandum Book entries by defendants Zurl and Freidrich; (2) specific forms and other documents which Plaintiffs assert relate to the crimes reported in the Tour Reports; and (3) an affirmation under oath

attesting to the non-existence of crime data, SPRINT reports, and 911 call records related to the January 20, 2010 traffic stop. *See* Amended Declaration of Plaintiff Samaad Bishop ("Bishop Am. Decl.") ¶¶ 12-18 [DE 59]. The Court will address each of these requests in turn.

### A. Memorandum Book Entries

In their document requests directed to the County, Plaintiffs sought the following:

> 5. Defendant Police Officer Joseph M. Zurl's Memorandum Book, Memorandum Pages and Memorandum Book entries from January 20, 2007 to January 20, 2010.
>
> 6. Defendant Police Officer David J. Friedrich's Memorandum Book, Memorandum and Memorandum Book entries from January 20, 2007 [to] January 20, 2010."

Pls.' Requests, Ex. C, Defs' Opp'n. Defendants objected to these demands "on the grounds of overbreadth, relevance, and materiality." Defs' Opp'n, Ex. D. Defendants further stated that Zurl and Friedrich were not required to maintain Memorandum Book entries on January 10, 2010. *See id.*[2]

Plaintiffs now seek to compel Defendants to produce (1) entries from the Memorandum Book kept by Zurl and Friedrich "for each reported crime they were making in an arrest, were backup, investigated, on the scene, etc;" and (2) the July 12, 2009 entries from Zurl's Memorandum Book which were made "in connection with the arrest of one Shadex Bunn." Bishop Am. Decl. ¶ 12. Plaintiffs generally assert that these documents are relevant to the claims

---

[2] In response to Plaintiffs' document request seeking Memorandum Book entries by Friedrich, Defendants responded that "P.O. Joseph M. Zurl was not required to maintain Memorandum Book entries on January 10, 2010." Defs' Opp'n, Ex. D (response to demand no. 6). The fact that Defendants reference Zurl (rather than Friedrich) in this response appears to have been inadvertent error, as both parties have proceeded in their submissions on this motion as if this response was, in fact, addressed to Friedrich (rather than Zurl). The Court therefore finds that it is Defendants' position that neither Zurl nor Friedrich maintained Memorandum Books on January 20, 2010.

9

asserted in this case and are not protected by privilege. *See* Memorandum of Law in Support of Plaintiff Samaad Bishop's Motion to Compel Disclosure ("Plaintiffs' Mem."), at 4-5 [DE 60].

In opposition, Defendants argue that Plaintiffs' request for Memorandum Book entries for three years prior to the underlying incident is overbroad and "falls outside relevant discoverable material," particularly since the allegations in the Third Amended Complaint "relate entirely to a discrete event alleged to have occurred on January 20, 2010." Defs.' Opp'n at 4. Defendants further assert that, as stated in their responses to Plaintiffs' discovery demands, neither Zurl nor Friedrich "were required to maintain Memorandum Books during their time as members of the Street Crime Unit, which included January 20, 2010, and thus they did not maintain Memorandum Books or make any Memorandum Book entries on January 20, 2010." *Id.* As for Zurl's July 12, 2009 Memorandum Book entries related to the arrest of Shadex Bunn, Defendants assert that Plaintiffs' request is improper because Plaintiffs did not previously request the production of these documents in their discovery demands. *Id.* Defendants further note that, even if Plaintiffs had requested this information, Defendants "would have objected on the grounds of relevance, materiality, and law enforcement privilege," and would have further informed Plaintiffs that "Defendant Zurl was a member of the Street Crime Unit on July 12, 2009 and did not (as he was not required to) maintain any Memobook entries for any of the activities that day." *Id.* at 4-5.

The Court concludes that Plaintiffs have not demonstrated their entitlement to the range of Memorandum Book entries they seek here. Primarily, the Court notes that Defendants cannot be compelled to produce documents which they do not possess or which do not exist. Defendants have made clear in their responses to Plaintiffs' document requests and in opposition to this motion that Zurl and Friedrich were not required to maintain Memorandum Books on January 20, 2010 (*i.e.*, the date of the underlying incident) and therefore neither officer has Memorandum Book

entries from that date. Moreover, to the extent that Plaintiffs now seek *all* of the Memorandum Book entries by Zurl and Friedrich "for each reported crime" where "they . . . ma[de] an arrest, were backup, investigated, on the scene, etc," *see* Bishop Am. Decl. ¶ 12, this request is overbroad. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) (District courts should deny discovery requests when they "create[ ] an inappropriate burden or hardship."); *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11–CV–976, 2012 WL 1899222, at *4 (E.D.N.Y. May 24, 2012) (Federal Rule of Civil Procedure 26(b)(2)(C) requires district courts to limit discovery when requests are burdensome and overbroad to prevent discovery from becoming "a fishing expedition"). Even assuming Plaintiffs intended to limit their request to Memorandum Book entries from the three years prior to the underlying incident (*i.e.*, from January 20, 2007 to January 20, 2010), as set forth in their document requests, *see* Pls.' Requests, Ex. C, Defs.' Opp'n, this request is still overbroad. "The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading." *287 Franklin Ave.*, 2012 WL 1899222, at *5 (quoting *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989)). Here, Plaintiffs' allegations in the Third Amended Complaint concern, as relevant here, one allegedly improper traffic stop which occurred on January 20, 2010, and the County's alleged policy of requiring SCPD officers to make unconstitutional traffic stops. In light of the limited scope of these claims, the Court finds that Plaintiffs' requests for Memorandum Book entries related to ***any and all*** police activity by Zurl and Friedrich from January 20, 2007 to January 20, 2010 are overbroad and are not appropriately tailored to the allegations in the TAC. *See generally Chevron Corp. v. Donziger*, 296 F.R.D. 168, 205 (S.D.N.Y. 2013) *reconsideration denied*, No. 11 CIV. 0691, 2014 WL 2608852 (S.D.N.Y. Mar. 4, 2014) ("Where document requests are overbroad and not tailored to the allegations in the

complaint, this factor will counsel against production."). Accordingly, the Court will not compel Defendants to disclose all Memorandum Book entries from this time period.

However, the Court concludes that, to the extent Plaintiffs seek information about *improper traffic stops* conducted by Zurl and Friedrich prior to the January 20, 2010 incident, such information may be relevant to Plaintiff's *Monell* claim concerning the County's purported traffic stop policy. *See generally Cooks v. Town of Southampton*, No. 13-3460, 2015 WL 1476672, at *8-*9 (E.D.N.Y. Mar. 31, 2015) (finding that information about alleged misconduct by the defendant police officer "which occurred up to and at the time of Plaintiff's arrest" was "relevant to Plaintiff's unlawful arrest claims as well as his *Monell* claims against the Town for failure to supervise and for ignoring police misconduct"). Defendants argue that Plaintiffs' requests for Memorandum Book entries dating back to January 20, 2007 are too broad. *See* Defs.' Opp'n at 4. The Court, however, finds the three-year time frame "to be both relevant and reasonable regarding a pattern and practice claim." *Mays v. Town of Hempstead*, No. CV 10-3998, 2011 WL 4345164, at *3 (E.D.N.Y. Sept. 15, 2011) (finding seven (7) years to be an appropriate date range for the plaintiff's *Monell* claim against the Town concerning racial discrimination). Accordingly, the Court will compel Defendants to produce Memorandum Book entries by Zurl and Friedrich restricted to traffic stops only which the officers conducted between January 20, 2007 to January 20, 2010, to the extent such entries exist.

Finally, Plaintiffs seek Zurl's July 12, 2009 Memorandum Book entries related to the arrest of Shadex Bunn. *See* Bishop Am. Decl. ¶ 12. The Court points out that Defendants' counsel disclosed information concerning Shadex Bunn in counsel's September 29, 2014 letter. Bassett Ltr., Ex. I., Defs' Opp'n. The source of Zurl's reference to "gang members who live on Madison Ave." in his Internal Correspondence was Zurl's presence at the July 12, 2009 arrest of Shadex

12

Bunn in North Amityville. *Id.* Notwithstanding the fact that this information may have some limited relevance, the Defendants assert that Zurl did not maintain a Memorandum Book on July 12, 2009 and the requested entries therefore do not exist. If Plaintiffs wish to explore this issue further, they may do so during the depositions of Zurl and Friedrich. As to the instant motion, Plaintiffs' request for Memorandum Book entries related to the arrest of Shadex Bunn is deemed moot.

### B.  Documents Related to Crimes Reported in the Tour Reports

Plaintiffs next seek specific documents they assert are related to the "crime data" Attorney Basset annexed to the September 29, 2014 letter – *i.e.*, the Tour Reports. Bishop Am. Decl. ¶¶ 13-15. Specifically, Plaintiffs request that Defendants be compelled to produce the following documents "kept in the normal course of business" by the SCPD "in connection to said reported events of crime":

> (1) PDCS From 1300f (Civil Complaint Report); (2) PDCS Form 1165b (Statement Form); (3) PDCS Form 1053c (Filed Report); (4) PDCS Form 1040 (Use of Force Report); (5) PDCS Form 6160 (Uniform Traffic Tickets; (6) PDCS Form 3226 (Traffic Stop Data Collection Report); (7) PDCS Form 1018 (The Field Action/Intelligence Report); (8) PDCS Form 2042 (Internal Correspondence Report); (9) CAD reports; (10) Investigative Reports; and (10) PDCS Form 1088f (Memorandum Book Entries).

*Id.* ¶ 13. Plaintiffs further request "all reports and documents of said events of crime to the New York State Division of Criminal Justice and the United States Department of Justice." and "any and all PDCS Form 3226 (Traffic Stop Data Collection Report) in connection of the January 20, 2010 traffic stop of Plaintiff by Defendants Zurl and Friedrich." *Id.* ¶¶ 14-15. Plaintiffs assert that they are entitled to discover these documents because the Tour Reports attached to Attorney

Bassett's letter are "insufficient, as Defendant County failed to . . . produce corroborating and corresponding documentation." *Id.* at 4.

Defendants argue in opposition that documents relating to the crimes described in the Tour Reports are not relevant to Plaintiffs' claims in this action because those documents did not serve as the "sources of information" for the references made by Zurl and Friedrich to "recent shootings in the area," "recent shootings in the 1st Precinct," "'Shots Fired' calls . . . in the area," "confirmed shootings . . . in the area," "recent gun violence," "recent violence" and "gang members who live on Madison Ave" in their Internal Correspondence. Defs.' Opp'n at 7. Defendants point out that Plaintiffs are now in possession of all information which served as the officers' "sources of information" and that Plaintiffs are therefore not entitled to further production on this issue. *See id.* Defendants further assert that Plaintiffs' requests are unduly burdensome as Defendants "would be forced to sift through a considerable number of files of completely unrelated matters and to make numerous redactions to provide police reports which could have no possible value to the plaintiffs claim of a violation of [their] rights when officers allegedly stopped an vehicle in which [they were] . . . passenger[s] for several minutes on January [20], 2010 [See DE 29] as they have no arguable relevance in and of themselves to the events of that day." *Id.* Finally, Defendants point out that Plaintiffs' request for "PDCS Form 3226 (Traffic Stop Data Collection Report)" related to the January 20, 2010 traffic stop is improper because Plaintiffs did not seek this form in his document requests and, in any event, "no such document exists." *Id.* at 8.

The Court concludes that Plaintiffs have not met their burden of a *prima facie* showing that all of the foregoing forms, reports, and documents are relevant to their claims in this action. Although Plaintiffs have listed the forms and documents by name, they have not described what relevant information those forms purportedly contain and how that information relates to the

claims in this action. Moreover, the Court agrees with Defendants that Plaintiffs are not entitled to further production concerning general criminal activity reported in the North Amityville area, a topic which is, at most, tangential to the issues in this litigation. To the extent Plaintiffs wish to test the veracity of the "sources of information" relied on by Zurl and Friedrich, they will have to explore that issue during depositions. Accordingly, the Court declines to compel Defendants to produce the various "forms" numbered one (1) through ten (10) above, or reports and documents sent to the New York State Division of Criminal Justice and the United States Department of Justice.[3]

As for the "PDCS Form 3226 (Traffic Stop Data Collection Report)" related to the January 20, 2010 traffic stop, this document appears arguably relevant to Plaintiffs' claims in this action and should be produced. However, given Defendants' assertion that "no such document exists," Defs.' Opp'n at 8, the issue appears to be moot. The Court directs Defendants' counsel to confer with the Defendants and to provide an affidavit from an individual with first-hand knowledge confirming that the referenced report/form does not exist. That affidavit is to be provided within fourteen (14) days.

### C. Sworn Statements Regarding the Non-Existence of Documents

Finally, Plaintiffs request a sworn "affirmation/declaration" stating that Defendants conducted a search for (1) reports, documents or other information indicating that "violent crime, gun shots, gang activity and confirmed gun . . . shots" were reported in North Amityville to the SCPD First Precinct on January 20, 2010; (2) 9-1-1 records or information indicating that Plaintiffs

---

[3] Since Bishop has not established the relevance of these requested documents, the Court need not address Defendants' claim that they are protected by the law enforcement privilege. *See* Defs.' Opp'n at 7.

15

"were not suspected of, nor accused of and involved in a crime, a violation of the law or a violation of New York State Vehicle Traffic Law on January 20, 2010;" and (3) 9-1-1 records or information indicating that the "motor vehicle in which Plaintiffs . . . were traveling in and was pulled over during the subject Terry stop, was not suspected of, nor accused of and involved in a crime," and that no such documents exist. Bishop Am. Decl. ¶¶ 17-19. Defendants oppose these requests, and note that Plaintiffs sought similar information in their "First Request for Admission" served on Zurl and Friedrich. Defs.' Opp'n at 9 (citing Plaintiff Samaad Bishop's First Request for Admissions to Defendant David J. Friedrich, annexed as Ex. E to Defs. Opp'n, and Plaintiff Samaad Bishop's First Request for Admission to Defendant Joseph M. Zurl, annexed as Ex. F to Defs. Opp'n).

Plaintiffs' request for a sworn affirmation is denied. As discussed in this Decision, Plaintiffs are not entitled to further discovery concerning the violent crime in North Amityville and the officers' "sources of information." The Court also previously noted during the September 11, 2014 conference that "Defendants' counsel confirmed that there are no 911 records with regard to the traffic stop involving the Bishops." DE 51 ¶ 10. Plaintiffs are seeking sworn statements attesting to a negative – that Plaintiff's were not suspected of or accused of a crime, among other things. This is not a proper discovery device. In addition, what Plaintiffs seek goes directly to the ultimate issue in this case and Plaintiffs are effectively seeking a concession of liability. Plaintiffs can pursue this issue at depositions through appropriate questioning of witnesses. Testing veracity is part of the deposition process.

Finally, the Court points out that Zurl and Friedrich admitted in response to Plaintiffs' request to admit that they were "not aware of any probable cause that Plaintiffs in fact had committed any criminal activity," when they conducted the traffic stop on January 20, 2010. *See*

Defendant Friedrich's Response to Plaintiff Samaad Bishop's First Request for Admissions, annexed as Ex. G to Defs.' Opp'n ¶ 24 [DE 63-8]; Defendant Zurls's Response to Plaintiff Samaad Bishop's First Request for Admissions, annexed as Ex. H to Defs.' Opp'n ¶ 24 [DE 63-9]. They are not required to do more here at this time.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel is GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order. Defendants are directed to produce the documents set forth in this Order within 14 days.

As the Court stated during the September 11, 2014 conference, Plaintiffs cannot put off the depositions of Zurl and Friedrich indefinitely. DE 51 ¶ 10. Accordingly, all depositions in this case must be completed by December 4, 2015 and the Court will not extend this date further.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

17