**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SAMAAD BISHOP and JABARI BISHOP,

                              Plaintiffs,

                   - against -

COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE COMMISSIONER
RICHARD DORMER, in his Individual and
Official Capacities, POLICE OFFICER
JOSEPH M. ZURL, SHIELD NO. 5349, in his
Individual and Official Capacities as a Suffolk
County Police Officer, and POLICE OFFICER
DAVID J. FRIEDRICH, SHIELD NO. 5729,
in his Individual and Official Capacities as a
Suffolk County Police Officer,

                          Defendants.
----------------------------------------------------------X

                                       **MEMORANDUM**
                                       **AND ORDER**

                                       13-446 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

      *Pro se* Plaintiffs Samaad Bishop and Jabari Bishop ("Plaintiffs") bring this civil rights

action pursuant to 42 U.S.C. §§ 1983 and 1986 against Defendants Suffolk County ("the

County"); Suffolk County Police Commissioner Richard Dormer ("Commissioner Dormer"), in

his individual and official capacity; Suffolk County Police Officer Joseph M. Zurl ("Defendant

Zurl"), in his individual and official capacity; and Suffolk County Police Officer David J.

Friedrich ("Defendant Friedrich"), in his individual and official capacity (collectively,

"Defendants").  Plaintiffs allege violations of their constitutional rights under the Fourth

Amendment.  *See generally* Third Verified Complaint ("TAC") [DE 29].  Presently before the

Court is Plaintiffs' motion seeking: "(1) an Order continuing the Rule 30(b)(6) witness deposition; (2) an Order directing Defendant County of Suffolk to produce a competent Rule 30(b)(6) witness at a deposition; (3) an Order directing Defendant County of Suffolk to pay the cost and expense of the continued and second Rule 30(b)(6) deposition; and (4) to grant any other relief the Court deems just and equitable."  Plaintiffs' Notice of Motion ("Notice of Motion") [DE 107].  For the foregoing reasons, the motion is DENIED, in part, and GRANTED, in limited part.

## II.    <u>RELEVANT BACKGROUND</u>

In connection with this motion, the *pro se* Plaintiff has submitted several documents, each of which will be discussed in greater detail below.  DE 107 (Notice of Motion).  Attached to Plaintiff's Notice of Motion is a document entitled "Letter Motion for Rule 37 Sanctions Re-Open the Deposition of Defendant Joseph Zurl Based on the Instructions By Counsel Not to Answer a Non-Privilege Deposition Question."  *See generally* Letter Motion [DE 107-1]. According to Plaintiff's Letter Motion, the deposition of Defendant Zurl took place on February 25, 2016.  *Id*. at 1.  During that deposition, Plaintiff Samand Bishop asked Defendant Zurl whether he took a "psychological test to be considered for employment with the City of New York Police Department" and Defendant Zurl answered in the affirmative.  *See* Partial Transcript of February 25, 2016 Deposition of Joseph Zurl ("Zurl Tr."), annexed as Ex. A to Plaintiffs' Letter Mot. at 11-12.  Plaintiff maintains that he then "asked Defendant Zurl to explain in detail what did this psychological test consist of," but before the Defendant answered, Attorney Mitchell, counsel for Defendants, objected on the grounds of privilege and instructed Defendant Zurl not to answer Plaintiff's question.  Zurl Tr. at 11-12.  Plaintiff argues that he is entitled to

question Defendant Zurl regarding the aforementioned "psychological test" because such information is not protected by any privilege and is therefore discoverable.  Letter Mot. [DE 107-1] at 1, 2.  Plaintiff also contends that the information is highly relevant to his *Monell* claim asserting a practice or custom on the part of Defendant Suffolk County in failing to properly hire and screen, and train and discipline, its defendant police officers as to arrests and related investigations."  *Id*. at 2.  At the conclusion of his Letter Motion, Plaintiff  requests that the Court: "(1) re-open the deposition of Defendant Zurl; (2) Order Defendant Suffolk County bear the cost for re-deposing Defendant Zurl."  Letter Mot. [DE 107-1] at 3.  Annexed to Plaintiffs' Letter Motion as Exhibit A is a copy of what Plaintiff believed to be the relevant portion of the transcript of Defendant Zurl's deposition.

In addition to the submissions listed above, Plaintiff has also filed an "Affirmation in Support of Motion Pursuant to Rule 30 and Rule 37 of the Federal Rules of Civil Procedure." *See* Samaad Bishop's Affirmation in Support ("Pl.'s Aff.") [DE 107-2].  The Affirmation focuses on the second request listed in Plaintiffs' Letter Motion.  *See* Pl.'s Aff. ¶¶ 3-16.  Plaintiff argues that Attorney Mitchell failed to produce a Rule 30(b)(6) witness in connection with Topic 6, as stated in Plaintiff's Notice of Rule 30(b)(6) Deposition.  *Id*. ¶ 6.  Topic 6 provided as follows:

> The Suffolk County Police Department's hiring requirements, practices, policies, training, procedures, directives and General Orders by the Suffolk County Police Department used in the decision making process to hire former police officers formerly employed by the City of New York Police Department.

Notice of Rule 30(b)(6) Deposition [DE 107-2], annexed as Ex. A to Pl.'s Aff. at 1, 6.  In sum, Plaintiff argues that he is entitled to depose another Rule 30(b)(6) witness regarding Topic 6 for the following reasons: "(1) Defendants Zurl and Friedrich are former police officers from the

3

City of New York Police Department ("NYPD"); (2) I have Title 42 U.S.C. § 1983 failure to screen Monell claims against Defendant County of Suffolk; (3) I have Title 42 U.S.C. § 1983 failure to train or supervise Monell claims against Defendant County of Suffolk; and (4) Defendants admitted it intentionally did not produce a Rule 30(b)(6) to testify about matters set forth in Topic No. 6."  Pl.'s Aff. ¶¶ 1-2.  Moreover, Plaintiff argues that the reason cited by Attorney Mitchell for failing to produce the appropriate witness, namely, the "deliberative process privilege" is inapplicable because Plaintiff is not seeking "an opinion, pre-decisional, or how Suffolk County policies are formulated."  *Id*. at ¶ 9.

Plaintiff submitted five exhibits with his Affirmation.  Exhibits B, C and D are correspondence exchanged between the County and Plaintiffs regarding the scope of the Topics set forth in Plaintiff's Notice of Deposition.  Exhibit E contains a copy of the portion of the transcript of the February 29, 2016 Deposition of Officer Patrick Morash.  *See* Partial Transcript of the February 29, 2016 Deposition of Patrick Morash ("Morash Tr."), annexed as Ex. E to Pls.' Letter Mot.  According to the transcript, Plaintiff was under the impression that Officer Morash was being produced to discuss Topic 6.  However, during the deposition, Attorney Mitchell informed Plaintiff that Officer Morash was produced to discuss a separate topic.  In connection with the County's purported failure to produce the relevant Rule 30(b)(6) witness, Plaintiff also submitted a "Memorandum of Law In Support of Motion Pursuant to Rule 30 and Rule 37 of the Federal Rules of Civil Procedure to Compel Continuation of Rule 30(b)(6) Deposition, Production of An Competent Rule 30(b)(6) Witness, and Request for Sanctions."  *See generally* Memorandum of Law ("Pls.' Mem.") [DE 107-3].

4

In an electronic Order dated April 28, 2017, the Court directed Plaintiff to file copies of the entire transcripts from the depositions of Defendant Zurl and Officer Morash.  Plaintiff provided the Court with the same on May 17, 2016.  *See* 5/17/2016 Electronic Order.

In the meantime, Defendants filed their Opposition to Plaintiffs' Motion on May 5, 2016.  *See generally* Defendants' Memorandum in Opposition ("Defs.' Opp'n.") [DE 108].  Defendants argue that Plaintiff's request for the production of psychological tests and the continuation of the witness deposition should be denied on the grounds that the information sought is both privileged and irrelevant to Plaintiff's claims.  *Id*. at 4.  More specifically, Defendants invoke the "psychiatrist-patient privilege" with respect to Defendant Zurl's psychiatric evaluations, and the "deliberative process privilege" with respect to Topic 6.  *Id*. at 5-8.  Defendants further argue that the information sought is irrelevant to Plaintiff's claims against the individual defendant police officers and to Plaintiff's *Monell* claims.  *See generally* Defs.' Opp'n.

### III.    <u>DISCUSSION</u>

As a preliminary matter, Plaintiffs' motion is untimely and that fact alone, particularly in light of Plaintiff's history of delinquencies in this case, would otherwise constitute sufficient grounds to deny Plaintiffs' motion.  During its June 10, 2014 Discovery Status Conference with the parties, the Court set an August 31, 2014 deadline for the completion of the depositions of Defendants Zurl and Friedrich.  DE 34, ¶ 4.  On August 29, 2014, Plaintiff Samaad Bishop requested an extension of this deadline on the grounds that he had not yet received certain paper discovery from the Defendants.  DE 45.  In that application, Plaintiff Bishop also set forth a briefing schedule, created with Defendants' counsel, for Plaintiff's Motion for Reconsideration

of the Court's August 18, 2014 Order.[1]  DE 45.  Pursuant to that schedule, Plaintiff was to file

his opening papers by September 2, 2014.  *Id*.  It was not until September 9, 2014, that Plaintiff

requested an extension of that deadline as he inadvertently left his Memorandum of Law on his

desk.  DE 50.

    Moreover, as discussed during the Court's September 11, 2014 conference, once Plaintiff

filed his opening papers, he also filed a supplemental affidavit and supplemental memorandum of

law without Court authorization.  *See* DE 51, ¶ 3.  The Court further notified Plaintiff that the

Clerk's Office had provided the Court with an envelope containing a document that Plaintiff was

attempting to file under seal, again without any authorization, in violation of the standing rules of

this District.  *Id*., ¶ 4.  The Court explained to Plaintiff that the proper procedure is to request

permission from the Court to file a document under seal before attempting to actually file the

document.  *See id*.

    During the September 11, 2014 conference, the Court also deferred the depositions of the

Defendant police officers pending resolution of an issue which had arisen from the production of

certain documents.  This information related to internal correspondence referencing a "high

crime area" in Amityville, "recent shootings in the area," and known gang members.  *Id*., ¶ 10.

The Court cautioned Plaintiff that the depositions could not be put off indefinitely and explained

that "[i]f information or materials come to light after the police officers have been deposed and

plaintiffs did not have the opportunity to inquire about that information during the police

---

[1]    The substance of the Court's August 18, 2014 Order [DE 43] will be discussed in greater detail below.  In sum, that Order addressed Plaintiff's request that the Court so-order three subpoenas, two of which were directed to the NYPD, and one of which was directed to the Superintendent of the New York State Police.  DE 40-42.  The Court denied Plaintiffs' requests but directed Defendants to produce certain documents.  DE 43.

officers' depositions, then Plaintiffs can make an application to the Court to re-open the depositions and their rights in that regard are preserved." *Id*.  The Court set a deadline of October 8, 2014 for Plaintiff to file a motion to compel regarding the above referenced information. *Id*.  On that date, Plaintiff requested an extension of the deadline, which the Court granted.  DE 55.

On October 21, 2014, Plaintiff requested an extension of the previously set October 10, 2014 deadline to file a Reply to Defendants' Opposition to Plaintiff's Motion for Reconsideration.  DE 58.  On November 20, 2014, Plaintiff requested an extension of time to file his Reply papers to Defendants' Motion to Compel.  DE 67.  Those papers were previously scheduled to be submitted by November 19, 2014. *Id*.  The Court granted Plaintiff's latter request on November 21, 2014. *See* 11/21/2014 Electronic Order.  On December 12, 2014, Plaintiff requested yet an additional extension of time to file his Reply papers.  DE 70.

During the December 23, 2014 conference, the Court set a briefing schedule for Plaintiff's then anticipated motion to amend his complaint for the fourth time.  DE 72.  Plaintiff's opening papers were to be filed by January 8, 2015. *Id*., ¶ 5.  Plaintiff filed his motion timely on January 8, 2015.  DE 78.  However, nearly one month later, on February 3, 2015, Plaintiff notified the Court that an exhibit was missing from his proposed Fourth Amended Complaint and that he had inadvertently not attached his memorandum of law in support of the motion.  DE 81.  After Plaintiff filed these documents, Defendants requested a two-week extension of the time to file their Opposition.  DE 80.  The Court extended Defendants' deadline to March 11, 2015.  2/25/2015 Electronic Order.  Plaintiff subsequently requested an extension of time to file a Reply to Defendant's Opposition to his Motion to Amend and indicated that the parties had agreed

7

upon a date of March 27, 2015. *See* DE 85. That request was granted. 3/24/2015 Electronic

Order. On April 1, 2015, the Court received another request from Plaintiff to further extend the

Reply deadline, which had already expired, due to his "computer crashing" on the evening of

March 27, 2015. DE 86.

In the Court's September 30, 2015 Order granting, in part, and denying, in part, Plaintiff's

motion to compel the production of certain documents [DE 56], the Court adjourned the deadline

to complete depositions to December 4, 2015. DE 93 at 17. The Court cautioned Plaintiff that

this deadline would not be extended any further. *Id.* On October 22, 2015, via Electronic Order,

the Court granted Plaintiff's request for an extension of time to file objections to the Court's

prior denial of his Motion for Reconsideration. DE 91. That request was later deemed moot.

10/6/2015 Electronic Order.

The Court conducted a Status Conference on November 11, 2015. *See* DE 98. Despite

the December 4, 2015 deadline for the completion of depositions, Plaintiff advised the Court that

he had not yet taken the depositions of the defendant police officers or of the Rule 30(b)(6)

witness(es). *Id.*, ¶ 2. In light of this information, the Court stated the following:

> Once again, similar to the cautions I issued to the plaintiffs a year
> ago, that deadline is four days away and nothing has been done.
> Plaintiffs continue to maintain that they do not have all the documents
> they need. They have previously declined to proceed with depositions
> without "all" the necessary documents. I explained to the pro se
> plaintiffs that discovery is not an exact science and that no attorney
> has the luxury of having "all" the documents he/she seeks before
> undertaking depositions.
>
> I am extending the depositions/discovery deadline ONE FINAL
> TIME. All depositions and discovery in this case ends on **February
> 29**. **That deadline will not be extended under any circumstances**.

*Id*. Plaintiff informed the Court that he previously served a Rule 30(b)(6) notice on Defendants' counsel. *Id*., ¶ 7. Successor counsel for Defendants, Attorney Jessica Spencer, indicated that she did not have such a notice in the files. *Id*. The Court therefore instructed Plaintiff to either serve a copy of the notice that was previously provided, or, if a notice was not previously served, to formulate a new notice and serve the same no later than December 23, 2015. *Id*. Plaintiff was warned that "**[i]f proper notice is not served by that date, plaintiffs will forfeit their right to conduct such deposition**." *Id*.

According to the Court's February 26, 2016 Order, at nearly 5 p.m. on that date, the Court received, via email, an application from Plaintiff Samaad Bishop seeking "Emergency Relief" from the Court regarding the depositions in this case. DE 101. The Court rejected the application on various grounds, including the fact that the Court had never granted Plaintiff permission to submit the application via email (a communication device not approved by the Court for messages) and the fact that at 26 pages in length, the application did not comply with the Court's Individual Rules. *Id*. The Court reiterated the reasons for its rejection of the "Emergency Relief" application and the proper procedure for filing applications for relief during its March 24, 2016 expedited telephone status conference. DE 105.

As this chronology demonstrates, since the beginning of this case, the Court has accommodated Plaintiff's multiple requests for extensions of time to complete certain tasks, even if those requests were submitted on or after the deadline date. After granting these numerous extensions, the Court set a final deadline of February 29, 2016 for Plaintiff's completion of depositions and for the completion of all discovery. The Court explicitly warned Plaintiffs that this was the final deadline and that it would "not be extended under any circumstances." Based

on the dates reflected on the transcripts, despite the final warning given to Plaintiffs on

November 11, 2015, Plaintiffs did not take the deposition of Defendant Zurl until February 25,

2016, some three and a half months later and four days before the ultimate deadline.  Officer

Morash's deposition did not occur until the date of the deadline, February 29, 2016.  Moreover, it

was not until April 22, 2016, nearly 60 days later – without authorization from the Court and,

according to Defendants' counsel, without making a good faith effort under Rule 37.3 to meet

and confer regarding the issues – that Plaintiff filed the instant motion.  Plaintiff's dilatory

conduct alone constitutes sufficient grounds to deny this motion.  Given Plaintiff's status as a *pro*

*se* litigant, however, the Court will, in its discretion, assess the merits of the motion.

### A.    Plaintiff's Request to Re-Open Defendant Zurl's Deposition for the Purpose of Questioning the Officer regarding Psychiatric Evaluations

#### 1.    Standard

New York Civil Rights Law § 50–a provides that:

> [a]ll personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency ... shall be considered confidential and not subject to inspection or review without the express written consent of such police officer ... except as may be mandated by lawful court order.

However, in federal civil rights cases, issues of privilege are governed by federal law, not state

law, and "[u]nder federal law, there is no confidentiality privilege afforded to police records as

there is under New York Civil Rights Law § 50–a."  *Smith v. Cnty. of Nassau*, No. CV 10–4874,

2013 WL 3893380, at *2 (E.D.N.Y. July 24, 2013) (citing *King v. Conde*, 121 F.R.D. 180, 187

(E.D.N.Y. 1988)); *see United States v. Collier*, No. 10–CR–820, 2013 WL 125691, at *1

(E.D.N.Y. Jan. 9, 2013) ("Although 'federal common law provides for some consideration of

state law privileges,' the protections of Section 50–a 'do not govern discovery in federal cases.'")

(quoting *Mercado v. Div. of N.Y. State Police*, 989 F. Supp. 521, 522 (S.D.N.Y. 1998))

(alteration omitted).  "In fact, 'in the context of a civil rights action asserted against police

officers, no federal rule prohibits discovery of police personnel documents.'"  *Smith v. Cnty. of*

*Nassau*, No. 10-4874, 2013 WL 3893380, at *2 (E.D.N.Y. 2013) (*quoting McKenna v. Inc. Vill.*

*of Northport*, 06 CV 2895, 2007 WL 2071603, at *7 (E.D.N.Y. Jul.13, 2007)).  "However, 'the

nonexistence of a federal law in this area does not give license for free and unfettered discovery

of police personnel documents.'"  *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 531

(E.D.N.Y. 2011) *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011) *aff'd sub nom*. *Newsday LLC v.*

*Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) (quoting *Cody v. N.Y.S. Div. of State Police*, No.

CV 07–3735, 2008 WL 3252081, at *2 (E.D.N.Y. July 31, 2008)).  Rather, a court "must balance

the interests favoring and opposing confidentiality in the discovery phase of the litigation."  *King*,

121 F.R.D. at 187; *see Smith*, 2013 WL 3893380, at *2; *Dorsett*, 762 F. Supp. 2d at 531.

　　　To effectively balance these interests, courts apply the two-prong test established in *King*

*v. Conde*.  *See, e.g., Coggins v. Cnty. of Nassau*, No. 07–CV–3624, 2014 WL 495646, at *2

(E.D.N.Y. Feb. 6, 2014); *Smith*, 2013 WL 3893380, at *2; *Dorsett*, 762 F. Supp. 2d at 532.

"Under the first prong of the *King* test, the police bear the burden of making a 'substantial

threshold showing' that harm is likely to occur as a result of disclosure of the requested

documents."  *Dorsett*, 762 F. Supp. 2d at 532; *see King*, 121 F.R.D. at 189 (internal quotation

marks omitted).  "Unless the government, through competent declarations, shows the court what

interests of law enforcement or privacy would be harmed, how disclosure under a protective

order would cause the harm, and how much harm there would be, the court cannot conduct a

11

meaningful balancing analysis." *Dorsett*, 762 F. Supp. 2d at 532 (quoting *King*, 121 F.R.D. at 189) (internal quotations and alterations omitted) (emphasis in original). "The declaration or affidavit submitted must (1) be under oath and penalty of perjury; (2) from a responsible official within the agency who has personal knowledge of the principal matters to be attested to; and (3) upon personal review of the documents." *Id.* "Only upon satisfying this initial threshold showing will a Court turn to the next prong and weigh the factors in favor of and against disclosure." *Id.* (citing *Cody*, 2008 WL 3252081, at *3; *McKenna*, 2007 WL 2071603, at *7). "Where defendants have not satisfied their burden of justifying the application of any privilege, the Court will not shield the requested documents and information from disclosure based on Section 50–a or any other privilege." *Smith*, 2013 WL 3893380, at *2 (internal quotation marks omitted).

"However, even where no substantial harm is shown under the first prong of the analysis, an objection as to the relevance of the documents may prevent their disclosure." *Cody*, 2008 WL 3252081, at *3 (citing *Barrett v. City of New York*, 237 F.R.D. 39, 42 (E.D.N.Y. 2006) (ordering relevant requested documents to be produced despite defendants' failure to specifically identify any harm that would result from production); *Unger v. Cohen*, 125 F.R.D. 67, 70 (S.D.N.Y. 1989) (holding that where defendants made no substantial threshold showing of specific harm, the court had no choice but to order disclosure "unless defendants' objections on grounds of relevance are sustained"). "[T]he purpose behind § 50–a is that it be used as a shield against irrelevant and improper disclosure of documents." *Dorsett*, 762 F. Supp. 2d at 531; s*ee King*, 121 F.R.D. at 192 ("The sole function of section 50–a is thus to protect irrelevant materials from disclosure: to prevent fishing expeditions, not to safeguard privacy itself."). "Thus, irrelevant

12

records will not be subject to discovery even where defendants fail to meet the requirements for shielding the documents from disclosure under *King*.  Conversely, if a record is deemed relevant to a plaintiff's case, it must be disclosed by the defendant."  *Cody*, 2008 WL 3252081, at *3 (citing *King*, 121 F.R.D. at 192; *Mercado*, 989 F. Supp. at 523 (ordering disclosure of ten disciplinary records of nonparty state troopers in Title VII action because "records might be relevant to prove that similarly situated white officers were treated differently")).

### 2.    *Analysis*

Plaintiff seeks an Order from the Court re-opening Defendant Police Officer Zurl's deposition for the purpose of questioning him regarding any psychiatric evaluations he underwent in connection with his previous employment as an NYPD police officer.  Defendants' counsel objects to Plaintiff's request on the grounds of privilege.  The relevant portion of the deposition transcript provides as follows:

| | |
|---|---|
| Plaintiff: | Okay. Were you given any psychological evaluation from NYPD? |
| Attorney Mitchell: | I'm objecting to the form. You can answer whether you did or not. I'm going to object to anything beyond. |
| Officer Zurl: | Psychological evaluation? |
| Plaintiff: | Yes. |
| Officer Zurl: | There was a psychological test, but I was never given an evaluation. |
| Plaintiff: | What did the test consist of? |
| Attorney Mitchell: | Object. Don't answer. |

| | |
|---|---|
| Plaintiff: | Was there a psychological test given by the NYPD prior to being hired by the NYPD? |
| Attorney Mitchell: | I object. Don't answer the question. |
| Plaintiff: | Counsel, you're not – |
| Attorney Mitchell: | You're asking was he given a test. |
| Plaintiff: | I'll withdraw the question. |
| Plaintiff: | Prior to being hired by the NYPD, were you given any psychological testing? |
| Attorney Mitchell: | Yes or no. |
| Officer Zurl: | Yes. |
| Plaintiff: | Okay. What did that testing consist of? |
| Attorney Mitchell: | Objection.  Don't answer the question. |
| Plaintiff: | On the record – |
| Attorney Mitchell: | It's privileged. I'm directing him not to answer the question. |
| Plaintiff: | It's not privileged. That is wrong. I have to get a ruling from the Court. I have to call the judge. I'm asking him a question about his own training. It has nothing to do with privilege. Privilege only deal with privilege. Privilege only deal with you being an attorney, Counsel. It has nothing to do with privilege as individual knowledge and information respecting to him being a police officer. |
| Attorney Mitchell: | My objection was on privilege. I'm directing him not to answer the question based on privilege. |
| Plaintiff: | Okay. We'll get a ruling on that. |

Zurl Tr. at 11-13.  As Plaintiff is aware, Defendant Zurl was employed as a police officer for the NYPD from approximately December 1997 to September 2000, Zurl Tr. at 8, more than ten years before the January 20, 2010 incident which is the basis for this lawsuit.  He joined the Suffolk County Police Department ("SCPD") in September 2000.  *Id.* at 14.  The SCPD is the only police department involved in this case.  Plaintiffs' *Monell* claim against Suffolk County is based on allegations of negligent hiring, failure to train and/or failure to supervise.  Based on these claims, the only documents which are relevant are those that the SCPD had in its possession and reviewed at the time it decided to hire the defendant officers.

On August 18, 2014, the Court directed the Defendants to produce any records relating to the hiring, training, and supervision of the defendant officers by the SCPD.  DE 43.  The Court also directed production of any disciplinary records for the two officers where any complaints or claims were brought based on claims of an improper traffic stop or false arrest.  *Id*.  To the extent that the SCPD received any records from the NYPD at the time of Defendants' hiring, Defendants were directed to produce those materials, with the exception of information such as pension plan documents, medical records, emergency contact, etc.  *See id*.  Consequently, the only records that are relevant here are those which were in the possession of the SCPD and considered by the SCPD at the time the Defendants were hired.[2]  Moreover, such records fall well outside the three-year statute of limitations applicable to Plaintiff's claims, including the *Monell* claim.

---

[2]    The Court points out that it previously denied Plaintiffs' attempt to serve a subpoena directly on the NYPD for Defendants' employment records, including any psychological testing. *See* DE 43.

Based on Plaintiff's line of questioning in the depositions of Defendant Officer Zurl and Officer Morash, it is apparent to the Court that Plaintiff is seeking these NYPD psychiatric evaluations, at least in part, in an attempt to uncover what he believes to be some separate criteria that the SCPD applied to new recruits coming from the NYPD.  The following excerpt from Officer Morash's deposition appears to undermine the argument Plaintiffs seem to be making that a separate hiring/screening criteria for such recruits existed.

Q    Let's turn to; are you familiar with the hiring practice of the Suffolk County Police Department?

A    Yes.

Q    And what capacity are you familiar with that?

A    Well, I went though it myself.  I'm currently assigned to the Police Academy where we administer the physical agility exam as well as train your recruits.

Q    With respect to hiring current or former NYPD police officers, do you have any knowledge about that?

A    No.  You're talking about hiring NYPD offices [*sic*].

Q    Yes, who are current or former NYPD –

A    *They have to go through the same exact process as any other new hire*.

Q    Are you familiar with the documents they use, Suffolk County Police Department use, when they consider NYPD officer?

A    *The same documents that any other recruit would go through, yes*.

Morash Tr. at 8-9 (emphasis added).  According to Officer Morash, every candidate for the SCPD is screened in the same manner, regardless of whether a new recruit previously worked as

16

a police officer for the NYPD.  Plaintiff has not set forth a good faith basis establishing anything to the contrary.

The Court's denial of Plaintiff's request to compel the production of any NYPD psychiatric evaluations is not unprecedented.  Courts have denied such requests in the context of Section 1983 claims asserted against defendant police officers, as well as *Monell* claims against municipalities, both of which Plaintiffs assert here.  For example, the court in *Smalls v. Fallon*, No. 92-8191, 1995 WL 5847, at *10 (S.D.N.Y. Jan. 5, 1995), held that a "Defendant's state of mind or 'condition' is [ ] irrelevant in a § 1983 action against a police officer, where liability depends upon the objective reasonableness of the defendant's actions, without regard to their underlying motives or attitude toward the suspect[.]" (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Miller v. Lovett*, 879 F.2d 1066, 1070 (2d Cir. 1989), *partially abrogated on other grounds by Graham*, 490 U.S. at 386, 109 S. Ct. 1865).  Moreover, the court in *Unger v. Cohen*, 125 F.R.D. 67 (S.D.N.Y. 1989) explained that:

> A police officer's mental health is not placed in issue solely by virtue of allegations of excessive force.  The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading.  The Complaint in this case includes no allegation warranting discovery of medical records.

*Id*. at 71.  As in *Unger*, Plaintiffs' complaint here is devoid of any allegations which place Defendant Zurl's mental health in question.  Moreover, Plaintiff has failed to set forth evidence of any circumstances in which the officer's mental health was questioned.

*Morales v. Town of Glastonbury*, No. 9-713, 2011 WL 3490080, at *4 (D. Conn. Aug. 10, 2011) is also instructive.  In *Morales*, the court denied the plaintiff's request for a

defendant police officer's medical records.  Similar to Plaintiffs here, the plaintiffs in *Morales* filed suit against certain police officers for violation of Section 1983 (excessive force) and against the defendant towns and their respective police chiefs for failure to screen, supervise and/or train the officers.  *Id*. at *1.  The plaintiff there alleged that the defendant police officers planned to make a "controlled purchase of drugs" from the driver of a vehicle in which the plaintiff was a passenger.  *Id*.  The plaintiff further alleged that the defendant officers punched and kicked him in the face and head causing him serious injuries.  *Id*.  The plaintiff requested one of the defendant officer's personnel files, including the officer's psychological evaluation.  *Id*. at *2.  In response, the court in *Morales* explained that "[t]he locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading."  *Id*. at *4 (citing *Unger*, 125 F.R.D. at 71).  With this in mind, the court held that "the request for the entire personnel file, including the psychological records, on the basis of the failure to screen claim is overbroad and not likely to lead to admissible evidence."  *Id*.  On these grounds, the court denied the plaintiff's request for the entire personnel file and psychological records.  *Id*.

A plaintiff's motion to compel the defendant police officer to produce copies of his psychiatric evaluations was also denied in *Mitchell v. Whitenight*, No. 11-684S, 2013 WL 5936978, at *3 (S.D.N.Y. 2013).  In *Mitchell*, the plaintiffs alleged that on July 20, 2010, the defendant police officers pulled over the vehicle driven by the plaintiffs, directed the plaintiffs to exit the vehicle, and then proceeded to assault them.  *Id*. at *1.  The plaintiffs demanded, in relevant part, the following documents from the defendant officers:

> documents relating to any complaints made against the individual defendants and any injuries sustained by civilians during the course of an arrest by the individual defendants; documents regarding any complaints against any law enforcement officer from January 1, 2002 to July 27, 2010; documents regarding all civilians charged with assault against a police officer from January 1, 2002 to July 27, 2010; defendant Whitenight's and defendant Sierk's complete personnel files, including disciplinary action, performance reviews and *psychiatric evaluations*; and documents relating to complaints by plaintiffs to the internal affairs division.

*Id.* at \*3 (emphasis added). The defendants countered by arguing that all documents related to the incident at issue in the case, including but not limited to the "use of force report; arrest/booking report; criminal information sheet; central booking form—case history; appearance ticket; mug shot; central booking/defendant information sheet; arrest data report; property form; CAD reports relating to audio transmissions; police report/resisting arrest form; and central police services printout" had already been produced. *Id.* The court in *Mitchell* held that the above-referenced document demand was "overly broad" but that the defendants were required to produce "any documents relating to the investigation of the incident" and "any documents relating to any investigation and/or discipline of defendants for complaints of use of physical force in apprehending, restraining, arresting or detailing a suspect where such complaints were determined to be substantiated," as well as copies of the defendants' performance evaluations. *Id.*

The Court has reviewed the case law cited by Plaintiff in his Letter Motion. Notwithstanding Plaintiff's effort to substantiate his assertions, many of the cases Plaintiff relies upon recite the general principles of law applied by the court. However, Plaintiff does not take into account the underlying and distinguishing facts of each case. For example, Plaintiff cites a

decision rendered by this court in *Moroughan v. County of Suffolk*, No. 12-512, 2015 WL

5475989 (E.D.N.Y. 2015).  Although this Court discussed the general legal principles applicable

to the motion to compel, that case did not involve the production of psychiatric records, which is

the subject of Plaintiffs' motion in the instant case.  *See generally id*.  Rather, the plaintiff in

*Moroughan* sought the production of documents concerning the indemnification and disciplinary

proceedings brought against the defendant officers.  *Id*. at *1.  *Moroughan* therefore provides

little support for Plaintiffs' motion here.  Likewise, Plaintiffs' reliance on *McKenna v. The*

*Incorporated Village of Northport*, No. 6-2895, 2007 WL 2071603 (E.D.N.Y. 2007) is of little

benefit because it makes no mention of psychiatric records.  Although Plaintiff has accurately

cited the general broad principles of discovery in these cases, in the end, it is the details which

account for the ultimate determination – details which are missing here.

      Other cases cited by Plaintiff are distinguishable as well.  In one example, Plaintiff cites

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995) in support of his assertion that

"[p]sychological records of a police officer highly relevant to the plaintiff's Monell claim

asserting a practice or custom on the part of Defendant Suffolk County in failing to properly hire

and screen, and train and discipline, its defendant police officers as to arrests and related

investigations."  Letter Motion at 2.  In *Vann*, an off-duty police officer driving his own vehicle

attempted to execute a u-turn when his car collided with a bus that the plaintiff was driving.  *Id*.

at 1041.  The officer exited his vehicle, drew his service revolver and told the plaintiff "I should

shoot you [ ] and make sure you never drive a bus."  *Id*. at 1041-42.  The plaintiff further alleged

that the defendant struck him in the head and face several times and threw him against a wall and

against the bus several times and handcuffed him.  *Id*. at 1042.  The arrest was subsequently

voided.  *Id*.  Pretrial discovery revealed that the defendant "had been the subject of numerous complaints, lodged by both colleagues and civilians; that he had been disciplined several times, psychologically evaluated, and placed on restricted duty; and that he had been returned to active duty, following which he was involved in several additional incidents before assaulting [plaintiff]."  *Id*.  What distinguishes *Vann* is that the records sought were from the officer's *current* employment—not a job with a different employer some ten years before the underlying incident.  Moreover, in the instant case, the Court has directed the Defendants to turn over any disciplinary records of the Defendants involving traffic stops or complaints of false arrest.

Based on the above analysis, the Court is denying Plaintiff's request to re-open Defendant Zurl's deposition for the purpose of allowing Plaintiff to question the officer regarding psychiatric evaluations conducted by the NYPD.

### B.    Plaintiff's Motion to Compel the Production of an Additional Rule 30(b)(6) Witness

Plaintiff further requests that the Court issue an Order directing Defendant SCPD to produce a competent Rule 30(b)(6) witness.  *See generally* Notice of Motion; *see also* Pl.'s Aff.; Pls.' Mem.  The Court has reviewed the topics set forth by Plaintiff in his Rule 30(b)(6) Notice and notes that there are some issues with the scope of several of them.  For example, Topic 1 provides as follows:

> Suffolk County Police Department's training, policies, procedures, and practices related to traffic stops conducted by Suffolk County police officers (uniformed/plain clothes), collecting crime data, defining and designating an area/neighborhood as a "high crime area", stop & frisk, Terry stops, reasonable suspicion, probable cause, objective reasonable suspicion, the Fourth Amended of the United States Constitution and the ability to identify the method and mechanism as to how Defendants Police Officer Joseph M. Zurl and

> Police Officer David J. Friedrich are required to document and
> memorialize their respective daily encounters with citizens,
> persons suspected of crime, persons accused of crime and persons they
> become involved in traffic stops or such incidents involving Plaintiffs
> which is the subject of the within lawsuit.

Notice of Rule 30(B)(6) Deposition ("30(b)(6) Notice") [DE 107-2], Topic 1.  The SCPD argued

that Topic 1 is "overly broad" and "not stated with sufficient particularity," and memorialized its

objections in a February 24, 2016 letter from Assistant County Attorney Brian Mitchell to

Plaintiff Samaad Bishop as well as a February 2016 email from Attorney Mitchell to Mr. Bishop.

*See* 2/24/2016 Letter, annexed as Ex. D to Pl.'s Aff.; 2/22/2016 Email, annexed as Ex B. to Pl.'s

Aff.  The Court agrees.  Plaintiff combined various, broad range topics into Topic 1, resulting in

a disjointed and somewhat confusing subject area.  Moreover, Plaintiff sought information on

topics not relevant to Plaintiff's claims.  Because Plaintiff alleges an improper traffic stop,

Plaintiff is entitled to information regarding the SCPD's procedures in connection with that type

of stop.  The SCPD's procedures for stop and frisks is beyond this scope.  Further, it is

questionable at best whether Plaintiff was entitled to additional information regarding the

methods by which the defendant officers memorialized their encounters with the public,

particularly in light of the sworn affidavits submitted addressing this issue.  Defendants Zurl and

Friedrich stated that they were not required to prepare or maintain memo books and therefore did

not maintain a memo book or make any memo book entries concerning traffic stops or any other

incidents or events.  Friedrich Affidavit [DE 100], ¶ 3-4; Zurl Affidavit [DE 99], ¶ 3-4; *see*

9/30/2015 Order [DE 93], at 10-13.

Although the Court notes that there are issues with other proposed Rule 30(b)(6) topics

22

listed by Plaintiff, the Court points out that Topic No. 6 appears to be the subject of Plaintiff's

motion.  Topic No. 6 provides as follows:

> The Suffolk County Police Department's hiring requirements, practices, policies, training, procedures, directives and General Orders by the Suffolk County Police Department used in the decision making process to hire former police officers formerly employed by the City of New York Police Department.

The SCPD declined to produce a witness to discuss this topic on the grounds that it is overbroad

and that the information sought is protected by the deliberative process privilege.  Defs.' Opp'n.

at 7.  The Court agrees in part and disagrees in part.

First, the premise behind Topic 6 is faulty.  As the Court discussed above, Plaintiff

assumes that the SCPD applies different criteria to recruits from the NYPD than it does to all

other recruits.   To the contrary, however, Officer Morash, made clear during his deposition that

NYPD recruits "*go through the same exact process as any other new hire*," and utilize "*[t]he*

*same documents that any other recruit would go through*."  Morash Tr. at 9 (emphasis added).

The Court would therefore not have required a witness to be presented for the purpose of being

questioned regarding Topic 6 as it is written.

However, to the extent Plaintiff seeks to question a witness regarding specific

qualifications for the position of police officer at the SCPD, the training that is given to new

recruits for the SCPD, and the procedures taught to new officers on how to conduct a traffic stop,

those inquiries are relevant to Plaintiff's claims.  It appears that Plaintiff already had the

opportunity to question Defendants' Rule 30(b)(6) witness regarding many of these points when

the SCPD produced Officer Morash.  In this regard, the Court points out the following excerpt

from Officer Morash's deposition:

23

> Q    Let's turn to; are you familiar with the hiring practice of the Suffolk County Police Department?
>
> A    Yes.
>
> Q    And what capacity are you familiar with that?
>
> A    Well, I went though it myself.  I'm currently assigned to the Police Academy where we administer the physical agility exam as well as train your recruits.

Morash. Tr. at 8.  Moreover, during a dispute with Plaintiff over which of the six topics Officer Morash would be questioned on, Attorney Mitchell explained the following:

> I produced officer Morash for the purposes that I made to Counsel which is essentially talking about training with relation to traffic stops, training in relation to the basis for the traffic stops in any related, and also just the general organization of the Police Department.

*Id*. at 11.  In connection with the above, Officer Morash explained that he had "conducted thousands of traffic stops" and that he "now train[s] new recruits in traffic stops."  *Id*. at 12.

The Court notes, however, that Officer Morash maintained he was not knowledgeable regarding the documents that the SCPD considers when hiring an individual.  Morash Tr. at 9. Regardless, Attorney Mitchell would not allow such a line of questioning.  *Id.*  Plaintiff is entitled to question a Rule 30(b)(6) witness regarding the factual basis/criteria (*i.e*., qualifications) the SCPD utilizes when hiring an individual as a police officer.  Plaintiff, however, is not entitled to pursue questions relating to the deliberative process of SCPD personnel who make the final determination of which individuals are hired as police officers.

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated."  *Dep't of the Interior and Bureau of Indian Affairs v. Klamath*

*Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001). In order for information to qualify for protection under the deliberative process privilege, it must be "predecisional" and "deliberative." *Conte*, 2009 WL 1362784, at *4 (quoting *Tigue v. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)); *see Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005). Material "is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 2000)). "Accordingly, 'the privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Conte*, 2009 WL 1362784, at *4 (quoting *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000); *see Tigue*, 312 F.3d at 80. Material is considered "deliberative" where it is "actually related to the process by which policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotation marks and alterations omitted); *see Hopkins v. HUD*, 929 F.2d 81, 84–85 (2d Cir. 1991). In other words, "an agency document must be 'indicative of the agency's thought processes.'" *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y. 2014) (quoting *Local 3, Int'l Broth. of Elec. Workers, AFL–CIO v. N.L.R.B.*, 845 F.2d 1177, 1179 (2d Cir. 1988)). The privilege does not apply to material that is "purely factual and not reflective of the agency's deliberative process." *Id.*; *see Schomburg v. New York City Police Dep't*, 298 F.R.D. 138, 144 (S.D.N.Y.2014); *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (quoting *Grand Cent. P'ship, Inc.*, 166 F.3d at 482). Here, Plaintiff is not entitled to information concerning any subjective documents in the possession of the SCPD as to the two Defendant police officers. However, Plaintiff is entitled to

25

question an appropriate witness regarding the objective documents and information which go to the standard qualifications the SCPD looks for in screening candidates for police officer positions.

In light of the above factors, the Court is directing the SCPD to produce a Rule 30(b)(6) witness for the very limited purpose of discussing the objective documents and/or information concerning the hiring of recruits.  In questioning the witness, Plaintiff is directed to adhere to the guidance and principles discussed above.  The deposition must be conducted no later than May 5, 2017 and is limited to 90 minutes in duration.  The Court DENIES the portion of Plaintiffs' motion seeking sanctions.  The cost for the additional deposition time shall be borne by the Plaintiffs.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to re-open Defendant Zurl's deposition for the purpose of questioning him regarding NYPD psychiatric evaluations is DENIED.  The portion of Plaintiffs' motion regarding the Rule 30(b)(6) witness is GRANTED in part, to the extent that the Court is directing the SCPD to produce a Rule 30(b)(6) witness for the limited purpose directed above.  As to the other relief sought in Plaintiffs' motion, that relief is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
      March 31, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge